IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERRICK JOSE MOORE,<br><br>      Plaintiff,<br><br>  v.<br><br>L. STEPP, et al.,<br><br>      Defendants.<br>_____/ | No. C 11-5395 CW (PR)<br><br>ORDER DIRECTING PLAINTIFF TO RESPOND TO DEFENDANT KRENKE'S MOTION TO DISMISS, DENYING MOTION TO DISMISS FOR FAILURE TO PROSECUTE, GRANTING MOTION TO COMPEL PLAINTIFF'S DEPOSITION, DENYING PLAINTIFF'S PENDING MOTIONS, REFERRING DISCOVERY DISPUTE TO MAGISTRATE JUDGE NANDOR VADAS AND DIRECTING ALL PARTIES TO CONSENT OR DECLINE TO PROCEED BEFORE MAGISTRATE JUDGE FOR ALL FURTHER PROCEEDINGS<br><br>(Docket nos. 22, 23, 27, 31, 32) |

    Plaintiff, a state prisoner currently incarcerated at Corcoran State Prison, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983, alleging the violation of his constitutional rights by correctional officers at Salinas Valley State Prison (SVSP), where he was incarcerated previously. The Court found cognizable Plaintiff's excessive force claim and dismissed his other claims as unexhausted. The Court ordered the excessive force Defendants -- Correctional Sgt. L. Stepp, Correctional Officer J. DeAnzo, Correctional Officer C. Gill and Correctional Lt. T. Krenke -- to file a motion for summary judgment or other dispositive motion and granted the parties leave to conduct discovery.

    Defendant Krenke has filed a motion to dismiss the claim against him as unexhausted. Plaintiff has not opposed or otherwise responded to the motion. All Defendants have filed a motion to dismiss the complaint for failure to prosecute or, in the alternative, to compel Plaintiff's deposition. Plaintiff has

1

opposed the motion and Defendants have filed a reply. Additionally, Plaintiff has filed various procedural motions.

For the reasons discussed below, Plaintiff is DIRECTED to file a response to Defendant Krenke's motion to dismiss, Defendants' motion to dismiss for failure to prosecute is DENIED, Defendants' alternative motion to compel Plaintiff's deposition is GRANTED, Plaintiff's procedural motions are DENIED and further matters pertaining to Plaintiff's deposition are REFERRED to Magistrate Judge Nandor Vadas.

BACKGROUND

Plaintiff's excessive force claim is based on the following allegations in his verified complaint.

On May 11, 2011, Plaintiff asked to speak with Defendant Stepp concerning a cell move. Stepp refused. Thereafter, Stepp and Defendant DeAnzo approached Plaintiff and ordered him to come towards them. When Plaintiff did, Stepp berated him for asking about the cell move. Plaintiff tried to explain the reasons for his request, at which point DeAnzo, at Stepp's direction, told him to cuff up and place his hands behind his back. Compl. ¶¶ 17-19.

Once Plaintiff was handcuffed and being escorted by Stepp and DeAnzo, Stepp began to verbally harass him. Plaintiff was slammed into the gate face first and DeAnzo choked him. He was then "yanked" off of the gate and continued to be verbally harassed while escorted to the Health Annex. Compl. ¶ 20.

Upon entering the Health Annex, Stepp and DeAnzo yelled at Plaintiff to stop resisting and slammed him against the window, causing injury to his shoulder, and slammed him on his hip, causing injury to his hip and back. While Plaintiff was on the

2

ground, Stepp placed his knee into Plaintiff's back, cutting off his ability to breathe, while DeAnzo repeatedly slammed his knee into Plaintiff's hip and lower back. Defendant Gill then rammed her knee into Plaintiff's calf and grabbed his left ankle, bending it back and trying to break it. Plaintiff, who was gasping for air, stated that he could not breathe. Stepp responded to Plaintiff: "If you can talk, you can breathe." Compl. ¶¶ 21-22.

Plaintiff was placed in a holding cell in leg irons and handcuffs for four hours. He was removed from the holding cell at the direction of Krenke, DeAnzo and correctional officer B. Hooker, who is not a Defendant in this action. As Plaintiff backed out of the cell while still in leg irons and handcuffs, he was slammed against the glass cell window and "forcefully stripped out" by the correctional officers, with Krenke's encouragement. Compl. ¶¶ 23-25.

Plaintiff claims that he was physically injured as the result of Defendants' use of force.

DISCUSSION

I. Defendant Krenke's Motion to Dismiss

Defendant Krenke moves to dismiss Plaintiff's excessive force claim against him on the ground that Plaintiff failed to exhaust administrative remedies with respect to that claim.

A. Legal Standard

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42

3

U.S.C. § 1997e(a).  The PLRA exhaustion requirement is mandatory and not subject to the discretion of the court.  <u>Booth v. Churner</u>, 532 U.S. 731, 739 (2001).

The PLRA requires "proper exhaustion" of administrative remedies.  <u>Woodford v. Ngo</u>, 548 U.S. 81, 93 (2006).  State prison regulations define the contours of proper exhaustion.  <u>Jones v. Bock</u>, 549 U.S. 199, 218 (2007).  To exhaust all available administrative remedies, a prisoner in a California state prison must complete four levels of administrative review, concluding with a third level appeal filed with the director of the California Department of Corrections.  <u>See</u> <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1264-65 (9th Cir. 2009).

Non-exhaustion is an affirmative defense which should be brought in an unenumerated motion to dismiss under Federal Rule of Civil Procedure 12(b).  <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1119 (9th Cir. 2003).  In deciding such a motion, the court may look beyond the pleadings and decide disputed issues of fact.  <u>Id.</u> at 1119-20.

B.   Analysis

Defendant Krenke argues that Plaintiff's excessive force claim against him is unexhausted because he did not present the substance of that claim in any administrative appeal. Specifically, Plaintiff's claim that Krenke failed to intervene to stop the use of force against him is based on his allegations that, after Krenke ordered other officers to remove him from the holding cell, he "was slammed against the glass window and forcefully stripped out" while Krenke "cheered his subordinates on."  Compl. ¶ 25.  Krenke maintains, however, that Plaintiff alleged in his grievance only that Krenke directed correctional

4

officers DeAnzo and Hooker to remove his clothes after the use of force by Stepp, DeAnzo and Gill, and did not allege that Krenke witnessed any use of force or that he was injured as a result of having his clothes removed. Decl. J. Lozano Supp. Mot. to Dismiss (Lozano Decl.) Ex. B (SVSP Appeal No. 11-01265 submitted by Plaintiff on May 29, 2011).

Plaintiff has not opposed or otherwise responded to Krenke's motion that this claim is unexhausted. Accordingly, he is DIRECTED to file an opposition or statement of non-opposition to the motion, as set forth in the Conclusion of this Order.

II. Defendants' Motion to Dismiss for Failure to Prosecute or, in the Alternative, to Compel Plaintiff's Deposition

Defendants move to dismiss the action for failure to prosecute or, in the alternative, to compel Plaintiff's further deposition because he refused to answer all questions at his first deposition, by invoking his Fifth Amendment privilege in response to every question asked of him. In support of the motion, Defendants' counsel, California Deputy Attorney General Virginia Papan, has submitted a declaration attesting as follows:

> On Monday, October 1, 2012, I traveled to the California State Prison Corcoran, in Corcoran, California to take the notice[d] deposition of Plaintiff, inmate Merrick Jose Moore. Present at the deposition were Moore, Correctional Officer L. T. Marin, and Court Reporter Theresa G. Mendoza. Moore was sworn in, gave his name, inmate number, the date, and noted the deposition was being taken by Defendants' counsel. Moore's responses to the remaining questions consisted of Moore's invocation of his privilege against self-incrimination under the Fifth Amendment, his right to invoke his privilege, and questions directed to me regarding his right to invoke his privilege.
>
> I informed Moore that this was his lawsuit and Defendants were entitled to take his deposition under Federal Rule of Civil Procedure 30. I also informed him

5

>    that his failure to cooperate in the deposition may result in sanctions, costs, and Defendants requesting dismissal of his case for his failure to cooperate in discovery.
>
>    Additionally, I directed Moore's attention to the Notice of Deposition and the portion of the notice that clearly stated that he needed to cooperate in the deposition or Defendants would seek to have his action dismissed.
>
>    The parties also attempted to engage the court in obtaining assistance with this issue.
>
>    After our attempts to obtained [sic] guidance from the court failed, I informed Moore that as Counsel for Defendants, I was entitled to ask him about the event that took place on May 11, 2011, and what he remembered about the event. Moore again invoked his privilege against self-incrimination.
>
>    I proceeded to ask him questions about the May 11, 2011, event, any alleged injuries he suffered, his alleged damages, medical history, and prison regulations. After each question, Moore invoked his Fifth Amendment privilege. When I asked Moore if he was going to invoke his privilege to all of my questions, Moore "pled the Fifth."
>
>    In one final attempt to proceed, I again informed Moore that his failure to cooperate in answering questions during the deposition would result in Defendants moving to dismiss his action, and seeking sanctions.
>
>    Because Moore refused to provide any additional responses, I suspended the deposition.

Decl. V. Papan Supp. Mot. to Dismiss (Papan Decl.) ¶¶ 2-8.

Attached to Papan's declaration is a copy of the notice of deposition and a certified copy of the full transcript of the deposition.

Plaintiff does not contest the accuracy of Defendants' depiction of the deposition. He argues, however, that the action should not be dismissed for failure to prosecute because he appeared at the deposition and provided Defendants with documents responsive to the notice of deposition, and only refused to answer

6

any question because there was a correctional officer in the room and Defendants' counsel was unable to tell him whether the deposition was being viewed by someone behind what Plaintiff suspected was a two-way mirror.

A.  Legal Standard

A district court may dismiss an action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).  See Link v. Wabash R.R., 370 U.S. 626, 633 (1962); McKeever v. Block, 932 F.2d 795, 797 (9th Cir. 1991).  "[F]ailure to prosecute diligently is sufficient by itself to justify a dismissal." Anderson v. Air West, Inc., 542 F.2d 522, 524 (9th Cir. 1976). Defendants argue that Plaintiff has failed to prosecute his case diligently by refusing to answer all questions about the events that form the basis for his claims against them.

Rule 26 of the Federal Rules of Civil Procedure provides that the scope of discovery includes "any non-privileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b). Under Rule 30, which governs behavior during a deposition, objections to a question during a deposition are noted on the record, "but the examination still proceeds; the testimony is taken subject to any objection."  Fed. R. Civ. P. 30(c)(2).  The only authorized exceptions for a deponent to not answer a question are "when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3) [motion to terminate or limit deposition]."

What is privileged is defined by the Federal Rules of Evidence; these rules include the privilege against self-incrimination.  Campbell v. Gerrans, 592 F.2d 1054, 1057 (9th Cir.

7

1979). "The principle of Fifth Amendment protection has been construed to permit the privilege to be asserted 'in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory.'" Id. (quoting Kastigar v. United States, 406 U.S. 441, 444 (1972)).  The Fifth Amendment privilege against self-incrimination applies to evidence that may directly support a criminal conviction, information that would furnish a link in the chain of evidence that could lead to prosecution, and evidence that a witness reasonably believes could be used against him in a criminal prosecution.  Maness v. Meyers, 419 U.S. 449, 461 (1972).

Under Federal Rule of Civil Procedure 37, when an adverse party fails to cooperate in discovery, the party seeking discovery may move to compel disclosure or discovery.  Fed. R. Civ. P. 37(a)(1).  In particular, this type of motion may be made if a deponent fails to answer a deposition question: "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(3)(B)(i) & 37(a)(4).  If the motion is granted and the deponent thereafter fails to comply with the court's order to answer a deposition question, the failure may be treated as contempt of court and the court may issue a variety of sanctions, including dismissal of the action.  See Fed. R. Civ. P. 37(b).

B.  Analysis

The Ninth Circuit twice has addressed the matter of discovery sanctions for a deponent's assertion of the Fifth Amendment privilege against self-incrimination in a civil proceeding.  In Lyons v. Johnson, 415 F.2d 540 (1969), the court upheld the

8

district court's dismissal of several cases filed by a plaintiff who refused to participate in any discovery whatsoever by invoking the Fifth Amendment privilege. The facts showed that the plaintiff had remained steadfast in her refusal to participate in any discovery, even after the district court held a hearing to explain what was required of her as a deponent under the Federal Rules of Civil Procedure and advised her that "if she wanted to use the shield of self-incrimination against any interrogation whatsoever regarding her claims, she would have to forego the right to prosecute the actions . . . ." Id. at 541. The Ninth Circuit explained its ruling as follows:

> On these absolutes, the orderly functioning of a court and the equal administration of justice by it could call only for the action which the trial court took. No abuse of discretion within the provisions of Rule 26(b), Fed. R. Civ. P., 28 U.S.C.A., could be said to be involved. The court was not dealing with the situation where there was shown to be any margin for a protective order under Rule 30(b) or (d). No aspect was shown to exist of unnecessary scope, improper motive or unfair manner as to the exercising of the discovery process.
>
> The naked question therefore simply was whether a plaintiff can refuse to submit to any discovery whatsoever upon his lawsuit, by asserting a Fifth Amendment privilege against any interrogation of him, and then demand that he nevertheless be permitted to continue with the legal pursuit of his claim, no matter what prejudice or possible unequal protection there might be involved to the defendant from such a court acquiescence.
>
> It is a little difficult to visualize how a possibility of self-incrimination could be involved in any mere relevant interrogation of appellant as to the background, aspects and incidents of her asserted claims, unless she had engaged in a matter of perjury as to the allegations of her complaints; but that question was not one which the court was called upon to consider. If, however, appellant could properly have had a fear of the possibility of exposure to some collateral or unrelated incrimination, she has received full protection against any such possibility from the court's

> complete honoring of the scope of the privilege asserted by her.
>
> Her obtaining of this shield, however, could not provide a sword to her for achieving assertion of her claims against the defendants without having to conform to the processes necessary to orderly and equal forensic functioning. Clearly, the process of discovery has become increasingly recognized as one of the primary and essential elements in making federal court business flow and in contributing to the accomplishing of trial justice or settlement termination of litigation. The scales of justice would hardly remain equal in these respects, if a party can assert a claim against another and then be able to block all discovery attempts against him by asserting a Fifth Amendment privilege to any interrogation whatsoever upon his claim. If any prejudice is to come from such a situation, it must, as a matter of basic fairness in the purposes and concepts on which the right of litigation rests, be to the party asserting the claim and not to the one who has been subjected to its assertion. It is the former who has made the election to create an imbalance in the pans of the scales.
>
> We would not have indulged in the extent of this expression except for a desire to reach through to appellant in her self-representation as to the course which she has chosen to take. She of course had the right to make that choice, but she must now accept the fact that the doors of the law are closed to any attempts by her to reassert her alleged claims.

Id. at 541-42.

Subsequently, in Campbell v. Gerrans, 529 F.2d 1054 (9th Cir. 1979), the Ninth Circuit distinguished the holding in Lyons when it reversed the district court's dismissal of a civil rights action because of the plaintiffs' refusal to answer four interrogatories. The Ninth Circuit noted that the plaintiffs initially had answered twenty-eight interrogatories and later stipulated to and answered two more, and that the remaining four "were of a highly questionable nature" and appeared on their face to raise Fifth Amendment problems. Id. at 1057. After reviewing relevant Supreme Court cases, the court concluded:

> In light of the Supreme Court decisions on the Fifth Amendment privilege, a plea based on this privilege in the discovery stage of a civil case cannot automatically be characterized as "willful default" resulting in dismissal.
>
> As a recent Supreme Court decision indicates, our holding in this case would not forbid the drawing of an adverse inference at trial. See, Baxter v. Palmigiano, 425 U.S. 308, 318 (1976), holding: . . . [T]he Amendment "does not preclude the inference where the privilege is claimed by a party to a civil cause."

Id. at 1058.

The present case lies somewhere between Lyons and Campbell. Plaintiff appeared at the deposition and provided Defendants' counsel with the documents requested in the notice of deposition. He refused, however, to answer all questions, asserting the Fifth Amendment privilege without explanation. He now explains that his reason for doing so was because there was a correctional officer in the room and Defendants' counsel was unable to tell him that the deposition was not being viewed by a third-party from behind a two-way mirror.

Based on this record, the Court finds that it would be premature to grant Defendants' motion to dismiss the action for failure to prosecute; accordingly, this motion is DENIED. Because Plaintiff refused to answer any deposition question, however, Defendants' alternative motion to compel his attendance at another deposition is GRANTED. Plaintiff shall attend the deposition and answer all questions unless there are grounds for a valid objection under Rule 37. He is advised that if he refuses to answer all questions asked of him by asserting the Fifth Amendment privilege, the case will be dismissed for failure to prosecute. If, based on his prior deposition, Plaintiff has objections to

11

specific questions that he believes would require him to provide "evidence that may directly support a criminal conviction, information that would furnish a link in the chain of evidence that could lead to prosecution, [or] evidence that [he] reasonably believes could be used against him in a criminal prosecution," Maness, 419 U.S. at 461, he shall move for a protective order prior to the deposition, as set forth in the Conclusion of this Order.  Plaintiff may decline to answer any question during the course of the second deposition only if it is a new question to which he believes he is entitled to assert his Fifth Amendment privilege.  If he does not seek and obtain a protective order prior to his second deposition, his refusal to answer the same questions to which he previously asserted his Fifth Amendment privilege will result in his being assessed sanctions, specifically, he will be required to pay -- in monthly installments from his prison trust account -- the travel expenses of Defendants' counsel to attend the deposition, and this action will be dismissed.

Plaintiff has no legal right to attend his deposition without the presence of a correctional officer.  A civil lawsuit, including a deposition, is a public proceeding, and the Court will not interfere with prison procedures that require the attendance of a correctional officer at a prisoner's deposition.  If Plaintiff believes he requires protection from the presence of a specific correctional officer at the deposition, and he has grounds and legal authority to support his argument, he shall move for a protective order prior to his deposition, as set forth in the Conclusion of this Order.  If he fails to do so and then

12

declines to answer questions at the deposition due to the presence of the attending correctional officer, he will be sanctioned and the case dismissed, as set forth above.

In order to ensure the just and speedy resolution of any dispute that might arise prior to or during the course of the second deposition, all such matters are REFERRED in advance to Magistrate Judge Vadas. Prior to noticing the deposition, the parties shall contact Magistrate Judge Vadas to ensure that the deposition takes place at a time when he is available by telephone to address any discovery issues that might arise.

The parties shall comply with the discovery and briefing schedules set forth in the Conclusion of this Order.

III. Plaintiff's Pending Motions

    A.   Motion to Conduct Depositions and for Production of Documents

Plaintiff moves for a court order to depose Defendants and for the production of documents. The accommodation of Plaintiff's right to discovery does not require a court order. Pursuant to the Federal Rules of Civil Procedure, he may use interrogatories, a request for admissions, a request for production of documents, and written depositions to obtain discovery from Defendants.[1]

---

[1] Under Rule 31, both parties and non-parties may be examined by way of written depositions. A deponent answers written deposition questions orally, in the presence of a court officer. See Fed. R. Civ. P. 31(b). If Plaintiff uses the written deposition procedure, however, the deponents may provide written answers to the written deposition questions. This procedure also will resolve the issue of taking the testimony under oath, for the witnesses must verify the written responses (just as answers to written interrogatories are verified). Consequently, appointment of a deposition officer authorized to administer oaths would not be required.

The district court generally is not involved in the discovery process and only becomes involved when there is a dispute between the parties about discovery responses, which normally are exchanged between the parties without any copy sent to the court. See Fed. R. Civ. P. 5(d). Before filing any motion to compel discovery, the parties must make a good faith effort to meet and confer to attempt to resolve any discovery dispute, as is required by Civil Local Rule 37-1. When a party is incarcerated, the parties may meet and confer via written communication.

Based on the above, Plaintiff's motion for a court order to depose Defendants and compel them to produce documents is DENIED without prejudice to refiling.

B. Motion for Protective Order

Plaintiff moves for a protective order to prevent prison officials at Corcoran State Prison, where he currently resides, from retaliating against him for filing the present action. However, those prison officials are not parties to this action and do not reside in this district. Accordingly, the motion is DENIED without prejudice to Plaintiff's pursuing the matter in the United States District Court for the Eastern District of California.

C. Motion for Appointment of Counsel

Plaintiff moves for the appointment of counsel to represent him in this action. There is no constitutional right to counsel in an action brought pursuant to 42 U.S.C. § 1983. Rand v. Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997). The court may ask counsel to represent an indigent litigant under 28 U.S.C. § 1915 only in "exceptional circumstances," the determination of which requires an evaluation of both (1) the likelihood of success

14

on the merits, and (2) the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved. Id. Both of these factors must be viewed together before reaching a decision on a request for counsel under § 1915. Id.

The Court is unable to assess at this time whether exceptional circumstances exist which would warrant seeking volunteer counsel to accept a pro bono appointment. The proceedings are at an early stage and it is premature for the Court to determine Plaintiff's likelihood of success on the merits. Accordingly, the request for appointment of counsel at this time is DENIED without prejudice to the Court's considering at a later stage of the proceedings whether appointment of counsel is warranted.

IV. Consent or Declination to Proceed Before Magistrate Judge

In order to encourage the just, speedy and inexpensive determination of 42 U.S.C. § 1983 cases filed in this district, the parties may waive their right to proceed before a district judge and consent to proceed before a magistrate judge for all purposes. Attached to this Order is a Notice of Option to Consent to Proceed Before United States Magistrate Judge and an Order requiring the parties to notify the Court whether they consent or decline to so proceeding. The parties shall complete the requisite consent or declination form and return it to the Court no later than fourteen days from the date of this Order.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1.  No later than fourteen days from the date of this Order,

Plaintiff shall file either an opposition or a statement of non-opposition to Defendant Krenke's motion to dismiss.

If Plaintiff opposes the motion, Defendant Krenke <u>shall</u> file a reply no later than <u>fourteen</u> days from the date the opposition is filed.

2.   Defendants' motion to dismiss the action for failure to prosecute is DENIED, and Defendants' alternative motion to compel Plaintiff's further deposition is GRANTED.  Docket no. 23.

3.   Plaintiff's motions to conduct a deposition hearing, for a protective order and for the appointment of counsel are DENIED. Docket nos. 22, 27, 31, 32.

4.   The discovery matters discussed in this Order are REFERRED to Magistrate Judge Vadas for further proceedings.

**5.**   No later than <u>fourteen</u> days from the date of this Order, all parties shall file their consent or declination to proceed before a United States Magistrate Judge.

6.   The parties shall abide by the following discovery and briefing schedules:

a.   If Plaintiff intends to file a motion for a protective order, he shall do so no later than <u>fourteen</u> days from the date of this Order.

Defendants shall oppose the motion no later than <u>fourteen</u> days from the date it is filed.

Plaintiff shall file a reply to the opposition no later than <u>fourteen</u> days from the date the opposition is filed.

Defendants shall not notice Plaintiff's deposition until after the motion for protective order is ruled on or until the

date for Plaintiff to file a motion for protective order has passed and he has failed to do so.

  b. No later than <u>August 1, 2013</u>, the parties shall complete all discovery.

  c. No later than <u>September 3, 2013</u>, Defendants shall file their motion for summary judgment.

No later than <u>October 1, 2013</u>, Plaintiff shall file his opposition to Defendants' motion.

No later than <u>October 15, 2013</u>, Defendants <u>shall</u> file their reply to the opposition.

This Order terminates Docket nos. 22, 23, 27, 31 and 32.

IT IS SO ORDERED.

Dated: 5/1/2013

CLAUDIA WILKEN
United States District Judge

17