IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MERRICK JOSE MOORE,

        Plaintiff,

   v.

L. STEPP, et al.,

        Defendants.

—————————————————————/

C 11-05395 CW (PR)

ORDER GRANTING, IN PART, DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT; STAYING REMAINING CLAIMS AND REFERRING FOR APPOINTMENT OF PRO BONO COUNSEL AND SETTLEMENT PROCEEDINGS

Docket No. 65

Plaintiff Merrick Jose Moore, a state prisoner currently incarcerated at High Desert State Prison, filed a <u>pro se</u> civil rights action pursuant to 42 U.S.C. § 1983, alleging that, on May 11, 2011 at Salinas Valley State Prison (SVSP), where he was incarcerated previously, correctional officers used excessive force against him.  Defendants have filed a motion for summary judgment.  Plaintiff has filed an opposition and what appears to be a cross-motion for summary judgment.[1]  Defendants have filed a

---

[1] The title of Plaintiff's opposition, "Notice of Motion and Opposition to Defendants' Motion for Summary Judgment," may indicate he is filing a cross-motion, although he does not make such an argument in the body of the motion.  For the first time in his sur-reply, Plaintiff argues, "a grant of summary judgment in Plaintiff Moore's favor is appropriate . . ."  Even though Plaintiff may not bring a cross-motion for the first time in a sur-reply, the Court addresses it and denies it as to all claims. Because it is denied, Defendants are not prejudiced by not having the opportunity to respond to it.

United States District Court
For the Northern District of California

reply and, with leave of the Court, Plaintiff has filed a sur-reply.  For the reasons discussed below, with the exception of one claim against Sgt. Stepp and Officer DeAnzo, Defendants' motion for summary judgment is granted and Plaintiff's cross-motion for summary judgment is denied.

EVIDENTIARY OBJECTIONS

Defendants object to many portions of Plaintiff's declaration and to the declaration of Plaintiff's witness, inmate Artis Gorham.[2]  Plaintiff objects to the declaration of Defendants' witness, Dr. Crayton.  The Court need not rule on these objections individually and does not consider inadmissible evidence.

BACKGROUND

The following facts are not in dispute.  On May 11, 2011, when Plaintiff was housed at SVSP, he was given a pass to go to the Mental Health Annex (MHA) for an annual review.  Plaintiff's current cellmate was about to be re-housed and Plaintiff was hoping to see Defendant Sergeant Stepp to get his approval for another inmate to move into his cell.  Plaintiff saw Sgt. Stepp in the area known as the "patio," the pathway near the MHA, and told him that his cellmate was "out" and that he was trying to get another cellmate so that he would not be removed from his cell.  According to Plaintiff, Sgt. Stepp said, "[N]ot right now."

About twenty minutes later, Plaintiff was on the recreation yard with other inmates when he saw Sgt. Stepp and Defendant

---

[2]Plaintiff's verified complaint is admissible evidence, to the extent the allegations are based on personal observations and knowledge.  See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

Officer J. DeAnzo on the walkway adjoining the recreational yard. After this, the facts are in dispute.

I. Defendants' Version of the Facts

Defendants' version of what occurred next is as follows. When Plaintiff saw Sgt. Stepp on the walkway, he went over to speak to him a second time.  Plaintiff was belligerent and disrespectful to Sgt. Stepp because he was dissatisfied with their earlier conversation.  Because Sgt. Stepp believed that Plaintiff's aggressive demeanor could create a situation that would endanger inmates and correctional staff, Sgt. Stepp instructed Officer DeAnzo to place Plaintiff in handcuffs.  Once Plaintiff was in handcuffs, Sgt. Stepp and Officer DeAnzo began to escort him to the MHA to be counseled on his behavior.  Inmates who act up in the yard are commonly taken to one of the MHA holding cells for counseling.  To escort Plaintiff, Sgt. Stepp took control of Plaintiff's right arm and Officer DeAnzo took control of Plaintiff's left arm.  During the escort, Plaintiff became more disrespectful, stating "[W]ait till these cuffs come off and I'll fuck you up."

On the way to the MHA, the officers had to stop to unlock the gate between the recreational yard and the patio.  Officer DeAnzo placed Plaintiff on the left side of the gate so Sgt. Stepp could unlock and open the gate to allow them to go through. Correctional staff are trained to place inmates on a wall while waiting to continue escort, to allow the officers to maintain control.  Once Plaintiff and Officer DeAnzo were through the gate, Sgt. Stepp locked it and the escort continued.

After they entered the MHA, Plaintiff became resistive by twisting his upper torso left and right and trying to break free from the officers' grasp.  Sgt. Stepp ordered Plaintiff to stop resisting, but he did not comply.  Sgt. Stepp and Officer DeAnzo placed Plaintiff up against an office window to utilize the minimal amount of force necessary to gain his compliance. Plaintiff became more violent and resistive, twisting his upper torso to the left and to the right more aggressively.  Sgt. Stepp grabbed Plaintiff's upper right arm with his left hand and placed his right hand on Plaintiff's right shoulder blade and, with the assistance of Officer DeAnzo, forced Plaintiff to the ground. Both Sgt. Stepp and Officer DeAnzo went down to the ground with Plaintiff.  By forcing Plaintiff to the ground, the officers were trying to gain control of him and reduce the threat that he might injure staff.  Resistive inmates in handcuffs can be dangerous because they can head-butt, kick, spit, bite and ram officers causing injuries.  On the ground, the same inmate has less opportunity to injure staff.  When he was on the ground, Plaintiff kept twisting and turning his body.  Both officers tried to hold Plaintiff down on the ground to subdue him.

Officer C. Gill, who was in the MHA, radioed to notify other yard staff that there was a resistive-inmate incident occurring in the MHA and then she pressed her audible alarm calling for staff assistance.  The alarm sounded at the same moment Plaintiff was forced to the ground.  Officer Gill then assisted Sgt. Stepp and Officer DeAnzo by securing Plaintiff's legs and placing Plaintiff in leg restraints.

1  Once Plaintiff was restrained, he stopped resisting.  Sgt.

2  Stepp instructed Officers DeAnzo and Knox to assist Plaintiff to

3  his feet and to secure him in a temporary holding cell, where

4  Registered Nurse D. Allen evaluated his physical condition.  Nurse

5  Allen's medical report indicates that Plaintiff only complained of

6  pain in his left ankle and that she observed abrasions on the

7  right side of his neck, his right shoulder, bicep and wrist and

8  his left shoulder and wrist, but observed no visible bruising or

9  swelling.

10  A short time after Plaintiff was placed in the holding cell,

11  Sgt. Stepp exited the MHA, saw Lieutenant T. Krenke outside on the

12  patio and advised him about Plaintiff's actions and the force

13  implemented to maintain safety.

14  At about 4:30 p.m., Officers B. Hook and S. Camacho released

15  Plaintiff from the holding cell and returned him to his housing

16  unit.

17  Plaintiff was charged with a rules violation for refusing to

18  follow orders and threatening and resisting staff.  On June 5,

19  2011, a rules violation hearing was held.  Plaintiff was found

20  guilty of resisting staff resulting in the use of physical force

21  and he was assessed a ninety-day forfeiture of credits and loss of

22  privileges.

23  II. Plaintiff's Version of the Facts

24  Plaintiff's version of what occurred is as follows.  When

25  Plaintiff first approached Sgt. Stepp to speak to him about

26  another cellmate, Sgt. Stepp became aggressive and told Plaintiff

27  to "get the fuck off my patio."  Plaintiff followed this

28  instruction to leave the patio and went to a table in the yard

**United States District Court**
For the Northern District of California

1   with other inmates.  A while later, Sgt. Stepp and Officer DeAnzo,

2   in an aggressive manner, ordered Plaintiff to get up and come

3   toward them.  Plaintiff complied and Sgt. Stepp began ranting that

4   Plaintiff had told Sgt. Stepp's staff that he was not going to

5   move from his cell.  Plaintiff tried to explain to Sgt. Stepp that

6   he did not want to be housed with an incompatible cellmate.  Sgt.

7   Stepp told Officer DeAnzo to put hand-cuffs on Plaintiff.

8   Plaintiff complied and then Sgt. Stepp and Officer DeAnzo escorted

9   Plaintiff away, calling Plaintiff "bitches and saying I don't run

10  nothing."

11       When they approached B Facility, Sgt. Stepp slammed

12  Plaintiff's face into the gate and Officer DeAnzo choked

13  Plaintiff's neck.  Sgt. Stepp kept aggressively calling Plaintiff

14  names and telling him that he could not choose his cellmate.

15  Plaintiff was then yanked off the gate and pushed into the MHA.

16       Once inside the MHA, Sgt. Stepp and Officer DeAnzo slammed

17  Plaintiff up against an office window, injuring Plaintiff's

18  shoulder.  Plaintiff was then lifted off the ground and body

19  slammed onto the concrete, causing injury to his hip and back.  On

20  the ground, Sgt. Stepp placed his knee on Plaintiff's neck and

21  Officer DeAnzo slammed his knee into Plaintiff's hip and lower

22  back.  Officer Gill then rammed her knee into Plaintiff's calf

23  repeatedly and grabbed and bent his left ankle.  Lt. Krenke

24  arrived while these officers were slamming their knees into

25  Plaintiff's body, but Lt. Krenke did nothing to stop them.

26       After "the assault," Plaintiff was placed in a holding cell.

27  Four hours later, Plaintiff was removed from the cell on the order

28  of Lt. Krenke.  Once Plaintiff was taken out of his cell, he was

slammed against the window by Officer DeAnzo and forcefully "stripped out." Plaintiff was taken back to his regular cell in a wheelchair.

DISCUSSION

I. Standard of Review

Summary judgment is proper where the factual record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those that affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Id. The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The party that moves for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. Id. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Id. On an issue for which the opposing party will have the burden of proof at trial, the moving party

need only point out "that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  If the nonmoving party fails to make this showing, "the moving party is entitled to summary judgment as a matter of law."  Celotex Corp., 477 U.S. at 323.

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence.  Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

When the parties file cross-motions for summary judgment, the district court must consider all of the evidence submitted in support of both motions to evaluate whether a genuine issue of material fact exists precluding summary judgment for either party. The Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1135 (9th Cir. 2001).

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact.  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  The evidence and the inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party.  Id. at 631.

II. Plaintiff's Excessive Force Claims

Plaintiff argues that Defendants used excessive force against him three times on May 11, 2011: (1) during his escort from the patio to the MHA when Sgt. Stepp and Officer DeAnzo slammed his face up against a wall; (2) at the MHA when Sgt. Stepp and Officer DeAnzo lifted him up, slammed him to the ground and slammed their knees into his body and Officer Gill rammed her knee into his calf, and (3) upon his release from the holding cell, when Lt. Krenke watched Officer DeAnzo ram Plaintiff's head against a window.

A. Legal Standard

Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment's Cruel and Unusual Punishment Clause, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).  In determining whether the use of force was excessive, courts may evaluate factors such as the need for the application of force, the relationship between the need for force and the force officers applied, any efforts officers made to temper the severity of their response and the extent of injury to the inmate.  Id. at 1, 6; see also Spain v. Procunier, 600 F.2d 189, 195 (9th Cir. 1979) (guards may use force only in proportion to need in each situation); Furnace v. Sullivan, 705 F.3d 1021, 1027 (9th Cir. 2013) (reversing district court's grant of defendants' motion for summary judgment because plaintiff's evidence that guards emptied two pepper spray canisters at him when he put his hands on his

United States District Court
For the Northern District of California

cell's food port opening raised a disputed issue of material fact
regarding whether he posed a threat that justified defendants
using pepper spray).  If the force officers use is so
disproportionate to that required that it suggests deliberate
sadism, the use of force violates the Eighth Amendment.  <u>Whitley
v. Albers</u>, 475 U.S. 312, 322 (1986).

Still, not every criticism of an officer's conduct suggests
excessive force.  <u>Id.</u>  The Eighth Amendment does not prohibit uses
of force that appear unreasonable in hindsight, so long as the
officers were acting in good faith and for a legitimate end.  <u>Id.</u>
In order for an Eighth Amendment excessive force case to go to the
jury, the evidence must go "beyond a mere dispute over the
reasonableness of a particular use of force or the existence of
arguably superior alternatives" to support "a reliable inference
of wantonness in the infliction of pain."  <u>Id.</u>

An officer can violate an inmate's Eighth Amendment rights by
failing to intervene to stop other officers from using excessive
force.  <u>Motley v. Parks</u>, 383 F.3d 1058, 1071 (9th Cir. 2004);
<u>Robins v. Meecham</u>, 60 F.3d 1436, 1442 (9th Cir. 1995).

B. Escort to MHA

Plaintiff claims that Sgt. Stepp and Officer DeAnzo used
excessive force by slamming his head against a gate when they were
escorting him to the MHA.  Defendants argue their evidence shows
that they placed Plaintiff up against the gate when they had to
open the gate and pass through it to get Plaintiff to the MHA and
that this constitutes reasonably necessary force, not excessive
force.

Plaintiff describes this event as follows: "Upon the approach to the B Facility Gate, I was slammed face first violently into the gate by Stepp as DeAnzo choked my neck."  Moore Dec. ¶ 4. Taken in the light most favorable to Plaintiff, the evidence that, without provocation, Sgt. Stepp slammed Plaintiff into a gate and Officer DeAnzo choked him, raises a genuine dispute of material fact whether Plaintiff was provocative and, even if he was, the level of force necessary to control him.  The prison protocol that required Sgt. Stepp and Officer DeAnzo to place Plaintiff against the gate while waiting to continue the escort does not authorize them to slam Plaintiff against the gate or to choke him while the gate was being opened.

Defendants' argument that no reasonable jury could find for Plaintiff on this claim is based on viewing the evidence in the light most favorable to themselves.  However, on Defendants' motion for summary judgment, the evidence must be viewed in the light most favorable to Plaintiff.  Defendants also argue that because there were no injuries to Plaintiff's face, a lack of evidence supports his claim.  This argument is unpersuasive. Although the extent of any injury is one factor that suggests whether the force used was excessive, see Hudson, 503 U.S. at 7, injury and force are only imperfectly correlated, and it is the latter that ultimately counts.  See Wilkins v. Gaddy, 559 U.S. 34, 36-38 (2010) (inmate who was gratuitously beaten by guards did not lose his ability to pursue excessive force claim merely because he had the good fortune to escape without serious injury).

On a motion for summary judgment, the Court cannot make credibility determinations.  When the evidence, taken in the light

**United States District Court**
For the Northern District of California

most favorable to Plaintiff, raises a genuine issue of material fact, as it does here, summary judgment must be denied.  See e.g., Chew v. Gates, 27 F.3d 1432, 1440 (9th Cir. 1994) (questions of reasonableness are best-suited for determination by a jury). Therefore, Sgt. Stepp and Officer DeAnzo's motion for summary judgment on this claim is DENIED.

C. Events in the MHA

According to Defendants, Plaintiff was resistive and belligerent in the MHA and, in order to control him and to prevent staff from getting injured, they took Plaintiff to the ground and secured his arms and legs.  According to Plaintiff, he was not resistive, but Sgt. Stepp was angry at him for trying to get a compatible cellmate and, once they arrived at the MHA, without warning, Sgt. Stepp and Officer DeAnzo lifted him and then slammed him to the ground and forcefully placed their knees on his neck, hip and back.  After he was on the ground, Officer Gill rammed her knee into his calf and bent his ankle.

This evidence, taken in the light most favorable to Plaintiff, raises a dispute of material fact regarding whether Plaintiff was resistive in the MHA and, even if he was being resistive, the reasonableness of the amount of force used.

Defendants argue that Plaintiff's evidence is insufficient for a reasonable jury to find in his favor.  They cite their own declarations, the declaration of witness Dr. Crayton and the finding of guilt at Plaintiff's disciplinary hearing to argue that the overwhelming evidence shows that Plaintiff was resistive. However, Plaintiff's evidence regarding this claim has been consistent.  The verified allegations in his complaint, his

**United States District Court**
For the Northern District of California

declaration, his videotaped interview and his 602 appeal all indicate that Sgt. Stepp and Officer DeAnzo, without provocation from Plaintiff, lifted him, slammed him on the ground and then ground their knees into various parts of his body.  Plaintiff's evidence is sufficient to raise an inference that Sgt. Stepp and Officer DeAnzo wantonly inflicted pain on Plaintiff.

Defendants also argue that Plaintiff's minimal injuries corroborate their evidence showing that the amount of force used was not excessive.  However, as discussed above, injury and force are only imperfectly correlated, and it is the latter that ultimately counts.  See Wilkins, 559 U.S. at 36-38.  Therefore, the fact that Plaintiff's injuries were not serious does not foreclose him from asserting this excessive force claim.

Also, as discussed above, on a motion for summary judgment, the Court cannot make credibility determinations.  When the evidence, taken in the light most favorable to Plaintiff, raises a genuine issue of material fact, as it does here, summary judgment must be denied.  Chew, 27 F.3d at 1440 (questions of reasonableness are best-suited for determination by a jury).  Accordingly, Sgt. Stepp and Officer DeAnzo's motion for summary judgment on this claim is DENIED.

On the other hand, Plaintiff's evidence against Officer Gill does not raise a reliable inference of wantonness.  His only evidence pertaining to Officer Gill is that, after he was on the ground, Officer Gill came over and rammed her knee into his calf and grabbed his ankle.  Plaintiff does not deny that, when he was on the ground, he was moving his arms and legs in a way that would have indicated to Officer Gill that Sgt. Stepp and Officer DeAnzo

United States District Court
For the Northern District of California

needed help in subduing him.  Therefore, the evidence concerning

Officer Gill, even taken in a light favorable to Plaintiff, does

not raise a reliable inference that she wantonly inflicted pain on

Plaintiff.  See Jeffers, 267 F.3d 895, 907 (9th Cir. 2010)(to

withstand summary judgment, claim must be backed up with

"specific, nonconclusory, factual allegations" that would, if

proven, show bad motive).  Summary judgment on this claim is

granted in favor of Officer Gill.

In regard to Lt. Krenke, Plaintiff states that, "after the

alarm was sounded and staff responded, Lt. Krenke was standing

watching the incident."  Moore Dec. ¶ 7.  From this brief

allegation, Plaintiff claims that Lt. Krenke was responsible for

Sgt. Stepp and Officer DeAnzo's infliction of excessive force

because he did not intervene to stop them from using excessive

force.  Although an officer has a duty to intercede when other

officers violate the constitutional rights of an inmate, see

Motley, 383 F.3d at 1071, this duty extends to a prison official

only if he has a reasonable opportunity to intervene.  See Robins,

60 F.3d at 1442.

Defendants present evidence that Lt. Krenke was not present

during the incident in the MHA.  In his declaration, Lt. Krenke

states that, on May 11, 2011, he responded to the incident

involving Plaintiff in the MHA, but he did not witness the

incident.  Krenke Dec. ¶¶ 2, 7.  He states that, if he had

witnessed the incident, he would have filed a staff report, an

837-C, as Sgt. Stepp and Officers DeAnzo and Gill did, but because

he did not witness it, he did not file such a report.  Krenke Dec.

¶ 7.  Sgt. Stepp's testimony corroborates that Lt. Krenke did not

witness the incident.  Sgt. Stepp states that, after Plaintiff was secured in a holding cell in the MHA, he exited the MHA and met Lt. Krenke on the patio where he advised Lt. Krenke about the incident with Plaintiff.  Stepp Dec. ¶ 12.  Defendants' evidence meets their burden of establishing that Lt. Krenke was not present during the MHA incident.  To defeat summary judgment, Plaintiff must present evidence that raises a genuine issue of material fact that Lt. Krenke was present.

Plaintiff's evidence that Lt. Krenke was present at the incident is his statement that "after the alarm was sounded and staff responded, Lieutenant T. Krenke was standing watching the incident."  Moore Dec. ¶ 7.  However, if, when the alarm sounded, Plaintiff was face-down on the ground, with three officers subduing him, it is unlikely that he could have noticed who arrived at the MHA in response to the alarm, or when they arrived. Although evidence on Lt. Krenke's motion for summary judgment is to be taken in the light most favorable to Plaintiff, Plaintiff's conclusory and unsubstantiated statement that Lt. Krenke was present and had the opportunity to intervene is insufficient to raise a dispute of material fact on this issue.  Therefore, summary judgment is granted in favor of Lt. Krenke on this claim.

D. Plaintiff's Release from the MHA Holding Cell

Plaintiff's brief statement about this incident is, "I was removed from the holding cage by DeAnzo and B. Hooker.  I was slammed up against the window by DeAnzo while still in handcuffs and leg irons and forcefully stripped out as Lieutenant Krenke cheered him on."

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Defendants submit evidence showing that none of the named Defendants was present when Plaintiff was released from the holding cell in the MHA.  Plaintiff was placed in holding cell No. 4.  The log for holding cell No. 4 shows that Plaintiff was checked every fifteen minutes by Officers Knox and Camacho.  Gill Dec. ¶ 11, Ex. 4.  The log also indicates that, at approximately 4:30 p.m., Plaintiff was released by Officers Camacho and Hooker. Id.  The log is signed by Sgt. Stepp as the supervisor authorizing release; the names of Lt. Krenke and Officer DeAnzo do not appear on the log.   Id.

The holding cell log is strong evidence that Lt. Krenke and Officer DeAnzo were not present when Plaintiff was released.  The fact that Plaintiff did not include this incident in his earlier descriptions of his excessive force claim is further evidence that Lt. Krenke and Officer DeAnzo were not present and did not use excessive force.  For instance, on May 12, 2011, the day after the incident, Plaintiff was interviewed about his excessive force claim and he did not mention that excessive force was used when he was released from the holding cell.  See ECF Doc. 97, DVD of Interview.  In this interview, Plaintiff stated, "About two hours after remaining in cage, I think it was Lt. Krenke, came over, they cuffed me up again . . . they striped [sic] me out while I was cuffed-up, escorted me to the cell while I was in a wheelchair. . . ."  Id.  Also, in his May 15, 2011 inmate grievance form, Plaintiff did not mention the use of force when he was released from the holding cell.  See Lozano Dec. in Support of Motion to Dismiss, ECF No. 18-3 at 1-15.  Nor did Plaintiff

1  mention this use of force at his prison rules violation hearing,

2  held on June 5, 2011.  See Krenke Dec., Ex. C. at 4.

3       Other than Plaintiff's statement in his declaration, which is

4  not corroborated by his video-recorded interview and his inmate

5  grievance, Plaintiff fails to present evidence on the issue of

6  force used on his release from the holding cell.  Plaintiff's

7  belated statement in his declaration, in conjunction with the lack

8  of corroborating evidence, fails to raise a genuine issue of

9  disputed fact that Lt. Krenke and Officer DeAnzo were present when

10 he was released from the holding cell or that excessive force was

11 used at that time.  See Jeffers, 267 F.3d at 907 (claims must be

12 backed up with specific, nonconclusory, factual allegations).

13      Accordingly, judgment on this claim is granted in favor of

14 Lt. Krenke and Officer DeAnzo.

15 III. Qualified Immunity

16      Defendants argue, in the alternative, that summary judgment

17 is warranted because, as government officials, they are entitled

18 to qualified immunity from Plaintiff's excessive force claim.

19      The defense of qualified immunity protects "government

20 officials . . . from liability for civil damages insofar as their

21 conduct does not violate clearly established statutory or

22 constitutional rights of which a reasonable person would have

23 known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The rule

24 of qualified immunity provides ample protection to "all but the

25 plainly incompetent or those who knowingly violate the law."

26 Saucier v. Katz, 533 U.S. 194, 202 (2001) (internal quotation

27 marks and citation omitted).

28

United States District Court
For the Northern District of California

The qualified immunity analysis is separate from the Eighth Amendment excessive force analysis.  Marquez v. Gutierrez, 322 F.3d 689, 691 (9th Cir. 2003).  Thus, an officer who commits an act which violates an inmate's Eighth Amendment rights may be entitled to qualified immunity if a reasonable officer in his position would have believed that his response was in good faith to restore discipline.  Id. at 692-93.

Under Saucier, the court must undertake a two-step analysis when a defendant asserts qualified immunity in a motion for summary judgment.  533 U.S. at 201.  The court first faces "this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Id.  If the court determines that a constitutional right has been violated, it then moves to the second step and asks whether the right was "clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. at 201-02.  The qualified immunity analysis does not take "20/20 vision of hindsight" into account, but rather gives deference to the judgment of reasonable officers at the time of the occurrence.  Graham v. Connor, 490 U.S. 386, 396 (1989).

In applying the first prong of Saucier, the Court has found that, viewing the evidence in the light most favorable to Plaintiff, with the exceptions of Sgt. Stepp and Officer DeAnzo's conduct while they were escorting Plaintiff to the MHA and after they arrived at the MHA, Defendants' actions did not amount to an Eighth Amendment violation.  Even if an Eighth Amendment violation had occurred, it would not have been clear to a reasonable officer

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

in Defendants' position that their conduct violated the prohibition against excessive force.

The Court now turns to the two instances where Plaintiff's evidence raised a genuine issue of material fact regarding whether he was being resistive and whether the amount of force used was reasonable. On a motion for summary judgment based on qualified immunity, the evidence also must be taken in the light most favorable to Plaintiff. Under Saucier's first prong and taking Plaintiff's evidence as true, the Court finds that Sgt. Stepp and Officer DeAnzo committed constitutional violations in both instances because, without provocation from Plaintiff they (1) slammed him against a gate and choked him and (2) lifted him, slammed him on the ground and then rammed their knees into his body. This amount of force without provocation is excessive. Turning to Saucier's second prong, an inmate's right to be free from excessive force was clearly established at the time of the incident. See Martinez v. Stanford, 323 F.3d 1178, 1183 (9th Cir. 2003) ("the law regarding a prison guard's use of excessive force was clearly established by 1994"). Under the clearly established law, and taking Plaintiff's evidence as true, a reasonable officer could not have believed that, without provocation, (1) slamming Plaintiff against a gate and choking him and (2) lifting and slamming Plaintiff down on the ground was lawful. Therefore, summary judgment as to Sgt. Stepp and Office DeAnzo based on qualified immunity is denied.

III. Plaintiff's Cross-Motion for Summary Judgment

On Plaintiff's cross-motion for summary judgment, the evidence must be viewed in favor of Defendants, as the non-moving

parties.  Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999); Intel Corp. v. Hartford Acc. & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Because Plaintiff bears the burden of proof on all the issues at trial, on his motion for summary judgment he must affirmatively demonstrate that no reasonable trier of fact could find other than for him.  See Celotex, 477 U.S. at 323.  On the claims where Defendants' motion for summary judgment is granted, Plaintiff's motion must necessarily be denied.  On the two claims where Defendants' motion is denied, Plaintiff's cross-motion is also denied because Defendants' evidence, taken in the light most favorable to them, raises a dispute of material fact whether Plaintiff was being resistive on the escort to the MHA and in the MHA and whether the amount of force used was reasonable.  Accordingly, Plaintiff's cross-motion for summary judgment is DENIED.

CONCLUSION

Based on the foregoing, the Court orders as follows:

1. Defendants' motion for summary judgment is GRANTED as to all claims with the exception of the two claims against Sgt. Stepp and Officer DeAnzo for the use of excessive force during the escort to the MHA and in the MHA.

2. Plaintiff's cross-motion for summary judgment is DENIED.

3. Because summary judgment has been denied, in part, this case is referred to the Federal Pro Bono Project to find counsel. If an attorney is located to represent Plaintiff, that attorney shall be appointed as counsel for Plaintiff until further order of the Court.

United States District Court
For the Northern District of California

4. The excessive force claims against Sgt. Stepp and Officer DeAnzo are hereby REFERRED to Magistrate Judge Nandor Vadas for settlement proceedings.  Such proceedings shall take place after counsel is appointed and within one-hundred-twenty (120) days of the date this Order is filed, or as soon thereafter as Magistrate Judge Vadas's calendar will permit.  Magistrate Judge Vadas shall coordinate a place, time and date for one or more settlement conferences with all interested parties and/or their representatives and, within fifteen days of the conclusion of all settlement proceedings, shall file with the Court a report thereon.

The Clerk is directed to provide Magistrate Judge Vadas with a copy of this Order.

5.  In view of these referrals, further proceedings in this case are hereby STAYED.  If the remaining excessive force claims are not settled, the Court will enter a new scheduling order for further proceedings.

6. This Order terminates docket number 65.

IT IS SO ORDERED.


Dated: 6/2/2014

CLAUDIA WILKEN
United States District Judge